**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
570 Broad Street – Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

*Attorney for Plaintiff*

[Additional Counsel on signature page]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Naymish Patel, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ZOOMPASS HOLDINGS, INC., ROBERT LEE, and BRIAN MORALES,<br><br>*Defendants*. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Naymish Patel ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Zoompass Holdings, Inc. ("Zoompass" or the "Company"), analysts' reports and advisories about the

Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Zoompass securities between April 24, 2017 and May 24, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Zoompass Holdings, Inc. develops a mobile money platform that enables brands to transform their financial interactions with customers. The Company also offers mobile money solutions that include international and domestic money transfers, contractor payments, direct payroll deposit, merchant payments, and bill payments.

3.      Founded in 2009, the Company is headquartered in Toronto, Canada, and its common stock trades Over-the-Counter ("OTC") under the ticker symbol "ZPAS."  On August 22, 2016, Zoompass Inc. acquired Uvic Inc. in a reverse merger transaction.

4.      Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose: (i) Zoompass unlawfully engaged in a scheme to promote the Company's stock; (ii) discovery of the foregoing conduct would subject the Company to heightened regulatory scrutiny and potential criminal

2

sanctions; and (iii) that as a result of the foregoing, Zoompass' public statements were materially false and misleading at all relevant times.

5. Following this announcement, shares of Zoompass fell from $3.64 per share on May 9, 2017, to a closing price of $1.97 on May 12, 2017 – a $1.67 or over 45% drop.

6. On May 9, 2017 Zoompass disclosed that it had been "made aware of and requested by the OTC Markets Group, Inc. to comment on recent trading and potential promotional activity".

7. On May 25, 2017, *Seeking Alpha* published an article alleging that Zoompass had erroneously denied its involvement with a scheme designed to promote Zoompass' stock; and that Zoompass had purposely kept hidden the fact that the Company's CEO was involved in a pump-and-dump scheme.

8. On this news, shares of Zoompass fell $0.70 or over 23% to close at $2.25 per share on May 25, 2017.

9. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant Zoompass' principal executive offices are located within this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff is a citizen of Gloucester County, New Jersey.  As set forth in the attached Certification, acquired Zoompass securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Zoompass is headquartered in Toronto, Canada.  Zoompass' principal executive offices are located at 107 Atlantic Avenue, Suite 201, Toronto, ON M6K 1Y2, Canada, and its U.S. offices are located at 96 Engle Street, Suite #1, Englewood, New Jersey 07631.  Zoompass common stock trades Over-the-Counter (OTC) under the ticker symbol "ZPAS."

16.     Defendant Robert Lee ("Lee") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

17.     Defendant Brian Morales ("Morales") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

18.     The defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

4

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Zoompass Holdings, Inc. develops a mobile money platform that enables brands to transform their financial interactions with customers. The Company also offers mobile money solutions that include international and domestic money transfers, contractor payments, direct payroll deposit, merchant payments, and bill payments.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on April 24, 2017, when Zoompass filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 Form 10-K").

21.     In the 2016 Form 10-K, the Company stated, in relevant part:

Our management, with the supervision and participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of our disclosure controls and procedures (as defined in Rule 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act"). Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures as of December 31, 2016, were effective such that the information required to be disclosed by us in reports filed under the Securities Exchange Act of 1934 is (i) recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and (ii) accumulated and communicated to our management to allow timely decisions regarding disclosure. A controls system cannot provide absolute assurance, however, that the objectives of the controls system are met, and no evaluation of controls can provide absolute assurance that all control issues and instances of fraud, if any, within a company have been detected.

***

**Promoters and Certain Control Persons**

We did not have any promoters at any time during the past five fiscal years.

Our executive officers and directors from time to time may serve on the board of directors executive officers of other companies.  However, none of our executive officer or directors serve as executive officers or directors or on the compensation committee of

another company that has any executive officer serving on our Board of Directors (or Board of Directors acting as the Compensation Committee).

No person who served on our Board of Directors (or Board of Directors acting as the Compensation Committee) had any relationship requiring disclosure under Item 404 of Regulation S-K.

22. The 2016 Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Lee and Morales, stating that the financial information contained in the 2016 Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting. The certifications also represented that the 2016 Form 10-K fully presented, "in all material respects, the financial condition and results of operations of Zoompass Holdings, Inc."

23. The statements referenced in ¶¶ 20-22 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Zoompass unlawfully engaged in a scheme to promote the Company's stock; (ii) discovery of the foregoing conduct would subject the Company to heightened regulatory scrutiny and potential criminal sanctions; and (iii) that as a result of the foregoing, Zoompass' public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

24. On May 9, 2017, Zoompass disclosed that it had been "made aware of and requested by the OTC Markets Group, Inc. to comment on recent trading and potential promotional activity."

25. Following this announcement, shares fell $1.67 or over 45% over three trading days.

6

26.     On May 25, 2017, *Seeking Alpha* published an article alleging that Zoompass had erroneously denied its involvement with a scheme designed to promote Zoompass' stock; and that Zoompass had purposely kept hidden the fact that the Company's CEO was involved in a pump-and-dump scheme. The article stated, in relevant part:

> Zoompass Holdings, Inc. (OTCPK:ZPAS) has been one of the top performing and most actively traded micro-cap stocks of 2017. During the past several months, shares of Zoompass have gone from almost complete dormancy to trading millions of shares while increasing in share price by as much as 150%.
>
> However, we believe that the recent move in share price is completely unwarranted and is related to an ongoing stock promotion campaign whereby an advertising budget of nearly $2 million is being spent on a promotional newsletter "touting the Company and encouraging investors to purchase the Company's common stock," as described in a recent press release.
>
> ***
>
> Shares of Zoompass have increased from about $1.50 per share to as high as $3.75 per share during the past three months with trading volume increasing significantly. Although difficult to prove, we believe that the main contributor to the stock's recent performance is not the company's recent results but rather an ongoing stock promotion campaign.
>
> ***
>
> In our opinion, the company's press releases … lack substance. For example, in the company's operational and corporate update, it referenced agreements with SYNNEX Canada Limited, SKY Devices LLC and U-Vend Group, but failed to mention specific terms and conditions.
>
> **Volatility Attributed To Stock Promotion**
>
> To date, we have discovered advertisements on Google and Yahoo Finance that direct visitors to a website promoting Zoompass...
>
> In true promotional form, the website features a glaring report by Editor Rick Currin that is quick to point out industry statistics and million dollar figures relating to "financial technology" while lacking substance relating to the company's internal business operations.
>
> ***
>
> It is our opinion that the recent run-up in Zoompass is primarily attributed to this nearly $2 million stock promotion campaign. As we have described in past

reports, shares of heavily promoted stocks like Zoompass are temporarily inflated during the promotional campaign and almost always crash in the short term.

We have found the smoking gun evidence linking Zoompass to another heavily promoted stock, Pura Naturals, Inc. (OTCQB:PNAT), and believe that the two stocks will behave similarly. Specifically, we believe that shares of ZPAS will decline by 50-70% from prevailing market prices similar to the way Pura Naturals traded when its stock promotion campaign topped out.

***

In addition to the similar website layouts and domain names used for both the Zoompass stock promotion (Zoompassinvestor.com) and Pura Naturals stock promotion (Purainvestor.com), you can find direct evidence connecting Creative Direct Marketing Group to both stock promotion advertisements.

***

Both stocks were dormant for months and traded at approximately $1.50 per share. Then, all of a sudden, each stock's volume spiked right around the time when promotional newsletter campaigns began surfacing on the Internet. After each stock climbed for about 25 trading days, share prices hit $3.75 and $3.64, respectively. Next, both stocks plummeted by more than 50% before bouncing.

***

In addition to the resemblances between the stock promotion campaigns subjected to Zoompass and Pura Naturals, there are also internal examples that demonstrate how the companies themselves may be connected.

*Robert "Rob" Lee*

Robert "Rob" Lee has maintained the position of chief executive officer and director of Zoompass Holdings, Inc. since August 2016. In addition to previously serving as the president and CEO of a company that eventually went into receivership, Lee has "focused on the financing and restructuring of various private entities":

***

In fact, we believe there is a possibility that Robert Lee may in fact also be the chief executive officer of Pura Natural, Inc. under the name Robert Doherty.

***

Either there was a highly unusual typo in the Zoompass annual report that mistakenly listed Pura Naturals CEO as its own or Robert Lee and Robert

8

Doherty may be the same individual. According to a Bloomberg biography, the chief executive officer for Zoompass Holdings, Inc. is Robert Doherty Lee.

If Robert Doherty Lee is serving dual roles as both the chief executive officer of Zoompass Holdings, Inc. and Pura Naturals, Inc., we believe that investors should remain highly suspicious of the failure to disclose this relevant information in the SEC filings.

27.     On this news, shares of Zoompass fell $0.70 or over 23% to close at $2.25 per share on May 25, 2017.

28.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Zoompass securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Zoompass securities were actively traded on the OTC.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Zoompass or its transfer agent and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Zoompass;

- whether the Individual Defendants caused Zoompass to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Zoompass securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

35.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Zoompass securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Zoompass securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

36.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

37.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Zoompass securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Zoompass securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

41.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Zoompass securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Zoompass' finances and business prospects.

42.     By virtue of their positions at Zoompass, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

43.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Zoompass securities from their personal portfolios.

44.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control.  As the senior managers and/or directors of Zoompass, the Individual Defendants had knowledge of the details of Zoompass' internal affairs.

45.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Zoompass.  As officers and/or directors of a publicly-held company, the Individual Defendants

had a duty to disseminate timely, accurate, and truthful information with respect to Zoompass'

businesses, operations, future financial condition and future prospects.   As a result of the

dissemination of the aforementioned false and misleading reports, releases and public statements,

the market price of Zoompass securities was artificially inflated throughout the Class Period.   In

ignorance of the adverse facts concerning Zoompass' business and financial condition which

were concealed by defendants, Plaintiff and the other members of the Class purchased or

otherwise acquired Zoompass securities at artificially inflated prices and relied upon the price of

the securities, the integrity of the market for the securities and/or upon statements disseminated

by defendants, and were damaged thereby.

46.     During the Class Period, Zoompass securities were traded on an active and

efficient market.  Plaintiff and the other members of the Class, relying on the materially false and

misleading statements described herein, which the defendants made, issued or caused to be

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares

of Zoompass securities at prices artificially inflated by defendants' wrongful conduct.   Had

Plaintiff and the other members of the Class known the truth, they would not have purchased or

otherwise acquired said securities, or would not have purchased or otherwise acquired them at

the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff

and the Class, the true value of Zoompass securities was substantially lower than the prices paid

by Plaintiff and the other members of the Class.   The market price of Zoompass securities

declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and

Class members.

47.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

48.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

49.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.     During the Class Period, the Individual Defendants participated in the operation and management of Zoompass, and conducted and participated, directly and indirectly, in the conduct of Zoompass' business affairs.  Because of their senior positions, they knew the adverse non-public information about Zoompass' misstatement of income and expenses and false financial statements.

51.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Zoompass' financial condition and results of operations, and to correct promptly any public statements issued by Zoompass which had become materially false or misleading.

52.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Zoompass disseminated in the marketplace during the Class Period concerning Zoompass' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Zoompass to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Zoompass within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Zoompass securities.

53.     Each of the Individual Defendants, therefore, acted as a controlling person of Zoompass.  By reason of their senior management positions and/or being directors of Zoompass, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Zoompass to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Zoompass and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

54.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Zoompass.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.


Dated: May 30, 2017                          **LITE DEPALMA GREENBERG, LLC**

<u>*/s/ Bruce D. Greenberg*</u>
Bruce D. Greenberg
570 Broad Street – Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: bgreenberg@litedepalma.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email: jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: May 30, 2017                              **LITE DEPALMA GREENBERG, LLC**

                                                */s/ Bruce D. Greenberg*
                                                Bruce D. Greenberg
                                                570 Broad Street – Suite 1201
         Newark, New Jersey 07102
         Telephone: (973) 623-3000
         Facsimile: (973) 623-0858
         Email: bgreenberg@litedepalma.com

         **POMERANTZ LLP**
         Jeremy A. Lieberman
         J. Alexander Hood II
         600 Third Avenue, 20th Floor
         New York, New York 10016
         Telephone:  (212) 661-1100
         Facsimile:  (212) 661-8665
         Email:  jalieberman@pomlaw.com
                 ahood@pomlaw.com
                 hchang@pomlaw.com

         **POMERANTZ LLP**
         Patrick V. Dahlstrom
         10 South La Salle Street, Suite 3505
         Chicago, Illinois 60603
         Telephone:  (312) 377-1181
         Facsimile:  (312) 377-1184
         Email:  pdahlstrom@pomlaw.com

         *Attorneys for Plaintiff*

**Submission Date**

2017-05-29 18:42:02

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.     I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against against Zoompass Holdings, Inc. ("Zoompass" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Zoompass securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Zoompass securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Zoompass securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.     I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Naymish Patel

# Acquisitions

# Sales

# Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**



(redacted)

**Signature**



**Full Name**

Naymish Patel



(redacted)

# EXHIBIT A

**ZOOMPASS HOLDINGS. INC. (ZPAS)**                                     **Patel, Naymish**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 4/25/2017 | Purchase | 375 | $2.0900 |
| 5/8/2017 | Purchase | 1,000 | $3.5677 |
| 5/8/2017 | Purchase | 300 | $3.5300 |
| 5/9/2017 | Purchase | 700 | $3.7100 |
| 5/9/2017 | Purchase | 100 | $3.6400 |
| 5/10/2017 | Purchase | 200 | $2.3431 |
| 5/11/2017 | Purchase | 300 | $2.1500 |
| 5/17/2017 | Purchase | 400 | $2.0700 |
| 4/26/2017 | Sale | 375 | $2.4900 |